```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 UNION MUTUAL FIRE INSURANCE COMPANY,

                    Plaintiff,                    MEMORANDUM & ORDER
                                                  22-CV-6322 (EK)(JRC)

           -against-


 STEVEN RODRIGUEZ and JAMES H. AREVALO
 MONSALVE,

                    Defendants.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        This is an insurance dispute between Steven Rodriguez and his general liability insurer. Rodriguez owns a property in Queens. A construction worker — James Monsalve — fell off a ladder while replacing an awning on the outside of the property. Monsalve then sued Rodriguez in state court. Union Mutual declined to indemnify or defend Rodriguez in that lawsuit. It now seeks a declaratory judgment from this Court that it had no duty to do so.

        The parties have filed cross-motions for summary judgment. For the reasons outlined below, the Court grants Union Mutual's motion and denies Rodriguez's motion.

## I. Background

        The following facts are drawn from the parties' Local Rule 56.1 statements and the exhibits appended to their summary

judgment papers. Unless otherwise noted, the facts discussed below are undisputed. When the Court cites only one party's Rule 56.1 statement, it is because the opposing party "either [has] not disputed those facts or has not done so with citations to admissible evidence." *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 271 n.2 (S.D.N.Y. 2024) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)).[1]

**A.    The Incident**

Rodriguez owns a property at 204-01 Jamaica Avenue in Queens. Def.'s Rule 56.1 Statement ("Def.'s 56.1") ¶ 33, ECF No. 51-1. Rodriguez leased one of the property's storefronts to a restaurant called La Perla De Oriente Corp. *Id.* ¶ 35. Without Rodriguez's permission, La Perla decided to change the signage and awning in front of the storefront. *Id.* ¶¶ 36-37, 39. Monsalve was one of the workers who handled this project. *Id.* ¶¶ 11, 16. Monsalve worked for a company run by a non-party individual named Angel Coronel, who provided him with tools and direction. *Id.* ¶¶ 11-15.

To perform the awning replacement, Monsalve first unscrewed the awning from the front of the building. *Id.* ¶¶ 18, 27. Workers at an off-site workshop then treated the awning's metal structure with "anti-corrosion paint." *Id.* ¶¶ 19, 26.

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

They also covered that structure with a "new cover" that contained "new publicity." *Id.* ¶¶ 23, 26. The "new cover" featured the name of the new tenant — La Perla — as opposed to that of the prior tenant, which was called Infinity Bar. Pl.'s Rule 56.1 Statement ¶ 15 ("Pl.'s 56.1"), ECF No. 54-3.[2] Monsalve noticed that the awning "looked newer" upon its return from the workshop. Def.'s Rule 56.1 Counterstatement ¶ 22 ("Def.'s Counterstatement"), ECF No. 55-1. He then screwed the awning back into the wall, where it rested on brackets affixed to the front of the building. Def.'s 56.1 ¶¶ 22-28. He was cleaning the newly installed awning when he fell backward off a ladder. *Id.* ¶¶ 30-32.

**B.    The Policy**

In June 2022, Monsalve sued Rodriguez in state court. *Id.* ¶ 1. Rodriguez had a general liability policy (the "Policy") with Union Mutual, which included 204-1 Jamaica Avenue

---

[2] Rodriguez appears to deny this fact. Def.'s Rule 56.1 Counterstatement ¶ 15, ECF No. 55-1. But Rodriguez testified that, immediately before La Perla installed its own signage, the storefront signage read "Infinity Bar." *See* Rodriguez Dep. 42:9-43:16, ECF No. 54-16. And he stipulated to the accuracy of two photographs — one taken before the installation, and one taken after — that illustrated this publicity switch. *Id.*; *see also* Stipulation & Photographs, ECF No. 54-17. Because the denial in Rodriguez's counterstatement contradicts both his own testimony and the undisputed photographic evidence, it does not create a genuine dispute of material fact. *See Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 103-04 (E.D.N.Y. 2011) (no genuine dispute of material fact where party denies facts supported by party's own deposition testimony); *accord Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").

3

as a covered "risk location." *Id.* ¶ 3. But Union Mutual declined to defend or indemnify Rodriguez under the Policy. *Id.* ¶ 4. Union Mutual relied on two provisions in its agreement with Rodriguez: (1) the Independent Contractor / Subcontractor Exclusion and (2) the Ongoing Operations Exclusion. *Id.* ¶¶ 8-9; *see also* Disclaimer of Coverage 3-7, ECF No. 51-7.

The Independent Contractor / Subcontractor Exclusion states (in relevant part) that the Policy only "afford[s] independent or subcontractor's coverage" if the following conditions are met:

1. With respect to work performed on your behalf by independent contractors or subcontractors, if (1) each such independent contractor or subcontractor carries insurance providing coverage for the "bodily injury" or "property damage" that would be subject to the exclusions in paragraphs 2, 3 and 4 below and; (2) such insurance provides coverage and limits at least equal to that provided by this policy but for the exclusions in paragraphs 2, 3 and 4 below and; (3) you have been named as an additional insured on such insurance coverage, then the exclusions in paragraphs 2, 3 and 4 below shall not apply and this policy shall be excess over such insurance.

   Otherwise;

2. This insurance does not apply to "bodily injury" or "property damage" arising out of any and all work performed by independent contractors and subcontractors, regardless of whether such work is performed on your behalf or whether such work is performed for you or others . . . .

   . . . .

4. This insurance does not apply to "bodily injury" or "property damage" sustained by any owner, partner or

4

> employee of any independent contractor or subcontractor working for you or on your behalf, regardless of whether such work is performed on your behalf or whether such work is performed for you or for others . . . .

Def.'s 56.1 ¶ 8; *see also* Insurance Policy 88, ECF No. 51-6.

For its part, the Ongoing Operations Exclusion states that the Policy does not apply to:

> Any construction, renovation or repair work being performed at any insured location, except when performed by independent contractors and / or subcontractors who have met the conditions of the [Independent Contractor / Subcontractor Exclusion].

Def.'s 56.1 ¶ 9; *see also* Insurance Policy 98.

After denying coverage, Union Mutual filed this action, seeking a declaratory judgment that it had no duty to defend or indemnify Rodriguez. Def.'s 56.1 ¶ 6.

## II. Legal Standard

Summary judgment is appropriate when there is no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). And a fact is material if it "might affect the outcome of the suit under governing law." *Id.*

5

The movant bears the burden of showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-movant would bear the burden of persuasion on a given issue at trial, the movant can satisfy its burden of production either by "submitting evidence that negates an essential element of the non-moving party's claim," or "demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

Whether an insurance policy exclusion applies is a mixed question of law and fact. *See Atl. Cas. Ins. Co. v. W. Park Assocs., Inc.*, 585 F. Supp. 2d 323, 326 (E.D.N.Y. 2008); *accord CAC Atl., LLC v. Hartford Fire Ins. Co.*, No. 16-CV-5454, 2017 WL 3149340, at *4 (S.D.N.Y. July 25, 2017). So, a court may only grant summary judgment if, based on the undisputed facts in the record, "reasonable minds could not differ" as to the exclusion's applicability. *Mendell v. Greenberg*, 927 F.2d 667, 673 (2d Cir. 1990).

### III. Discussion

The Declaratory Judgment Act permits a district court to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Courts "commonly acknowledge the propriety of

6

declaratory relief in actions, like this one, initiated by insurers against their insureds to bring certainty to their coverage obligations, particularly where underlying actions against the insured already are pending." *Harleysville Ins. Co. v. Certified Testing Lab'ys Inc.*, 681 F. Supp. 3d 155, 165 (S.D.N.Y. 2023) (collecting cases).

Here, the parties argue at length about whether Monsalve was an "independent contractor" within the meaning of the Independent Contractor / Subcontractor Exclusion.  But the Court need not decide that question, because the Ongoing Operations Exclusion is plainly dispositive.

The Ongoing Operations Exclusion states that the Policy does not apply to any "construction, renovation or repair work" at 204-01 Jamaica Avenue, unless the person performing that work is an independent contractor that meets the criteria outlined in the Independent Contractor / Subcontractor Exclusion.  Insurance Policy 98 (excluding coverage for "[a]ny construction, renovation or repair work being performed at any insured location, except when performed by independent contractors and / or subcontractors who have met the conditions of the [Independent Contractor / Subcontractor Exclusion] attached to the policy.").  Plaintiff has adduced no evidence suggesting that the Independent Contractor / Subcontractor Exclusion's criteria were met.  Even assuming Monsalve was an

7

independent contractor, there is no evidence that he held insurance "at least equal" to that provided by the Policy. Insurance Policy 88. Nor is there evidence that Rodriguez was listed as an "additional insured" on any policy covering Monsalve. *Id.* On the contrary, Rodriguez himself testified that he was "unsure" whether La Perla "procured any insurance which named him as an additional insured." Def.'s 56.1 ¶ 36.

So, the Ongoing Operations Exclusion applies (and Union Mutual is entitled to summary judgment) if Monsalve was participating in "construction, renovation or repair work" at the Jamaica Avenue property. The Policy does not define those terms. In such circumstances, it is the "common practice of New York courts to refer to dictionaries to determine the plain and ordinary meaning of the words in a contract." *Violet Realty, Inc. v. Amigone, Sanchez & Mattrey, LLP*, 183 A.D.3d 1278, 1280 (4th Dep't 2020).

Monsalve's activities plainly fall within the dictionary definitions of "renovate" and / or "repair."[3] To renovate means "to restore to freshness, purity . . . [or] newness of appearance." Renovate, *Webster's New Int. Dictionary* (2d ed. 1946). And to repair means "[t]o restore to a sound or good state." Repair, *Webster's New Int. Dictionary* (2d ed.

---

[3] The Court therefore does not consider whether Monsalve was also engaged in "construction."

8

1946); *accord* Repair*, Black's Law Dictionary* (12th ed. 2024). Here, Monsalve participated in a process that restored the awning (and its cover) to a "good state" and to "newness of appearance." After he took down the awning, workers treated its structure with new anti-corrosion paint and covered it with new publicity for a new tenant. Def.'s 56.1 ¶¶ 23, 26. Monsalve then completed the restoration process by attaching the refreshed awning to the front of the building. *Id.* ¶ 28.

Rodriguez offers several unconvincing responses on this front. He begins by arguing that the phrase "construction, renovation, or repair" is ambiguous because the Policy does not define it. Def.'s Br. in Opp. to Mot. for Summ. J. 10 ("Def.'s Br."), ECF No. 55-2. But the "mere fact that a contractual term is undefined does not render it ambiguous *per se*." *United States v. Am. Soc'y of Composers, Authors & Publishers*, 309 F. Supp. 2d 566, 573 (S.D.N.Y. 2004) (applying New York law); *see also World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 183-84 (2d Cir. 2003) ("[W]e must decide whether the undefined term 'occurrence' when used in a first-party property damage contract is ambiguous [under New York law].").

Rodriguez then argues that Monsalve's activities did not fall within the dictionary definitions of "repair" or "renovate." Def.'s Br. 11-12. For example, he argues there was no "renovation," because Monsalve was affixing a new sign rather

9

than restoring a "pre-existing sign." *Id.* Of course, Rodriguez ignores that Monsalve and other workers also restored the awning's "pre-existing" metal structure by removing, repainting, and reaffixing it.[4] Def.'s 56.1 ¶¶ 18, 26-27. But more generally, Rodriguez omits to explain why a renovation cannot include the addition of new constituent parts. Consider common usage: if a person removes his old kitchen cabinets and replaces them with more modish ones, it would hardly be unusual for him to describe that process as a kitchen "renovation."

Finally, Rodriguez relies on the deposition of Union Mutual's underwriting agent, James Lambert. Specifically, he points to Lambert's testimony that, under Union Mutual's underwriting guidelines, Lambert could not underwrite "buildings that [were] undergoing major renovations" or that had "construction exposure." Lambert Dep. 22:15-20, 28:5-6, ECF No. 55-8. According to Rodriguez, this testimony suggests that Monsalve's activities cannot have been "renovation" or "construction," because Union Mutual would never have insured 204-01 Jamaica Avenue if they were.

At the outset, Rodriguez unjustifiably assumes that Union Mutual's underwriting guidelines should govern

---

[4] For the same reason, Rodriguez's argument about the term "repair" also fails. Rodriguez asserts that there is "no evidence of any repairs that were made back at the shop." Def.'s Br. 12. This, of course, ignores the treatment of the awning structure with new anti-corrosion paint.

10

interpretation of the Policy. They do not. "Where the terms of an insurance policy are clear and unambiguous, they should be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." *Matter of Ideal Mut. Ins. Co.*, 231 A.D.2d 59, 63 (1st Dep't 1997). Courts may only consider extrinsic evidence where the "policy is ambiguous and susceptible of two reasonable interpretations." *Id.*

Beyond that, Rodriguez mischaracterizes Lambert's testimony. Lambert testified that he would not underwrite buildings undergoing "*major* renovation[]." Lambert Dep. 22:15-20 (emphasis added). But in the next breath, he said his agency was "allowed to underwrite properties with [more minor] construction or renovation going on," such as "[i]nstalling a new roof" or "repairs to the sidewalks." *Id.* at 22:18-23:3, 23:4-6, 27:5-9. Similarly, shortly after his comment about "construction exposure," Lambert noted that his agency had to "balance" the need to minimize risk against the reality that tenants "need to do repair work and renovations to buildings." *Id.* at 28:5-12. Put simply, Lambert never said that Union Mutual would not insure a building that was, for example, replacing an awning. (If anything, he said the opposite.)

In sum, a reasonable jury could not conclude otherwise than that Monsalve's activities fell within the ordinary meaning of the phrase "construction, renovation or repair work." And

11

there is no evidence suggesting that the criteria triggering an exception to that exclusion have been satisfied. The Ongoing Operations Exclusion therefore applies, and Union Mutual is entitled to summary judgment.

### IV. Conclusion

For the foregoing reasons, Union Mutual's cross-motion for summary judgment is granted. Rodriguez's cross-motion is denied. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   September 30, 2025
         Brooklyn, New York